# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WAYNE HENRY GARRISON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07-CV-542-JHP-TLW** |
| | ) | |
| **RANDALL G. WORKMAN, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>OPINION AND ORDER</u>

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner Wayne Henry Garrison, a state prisoner appearing *pro se*. Respondent filed a response to the petition (Dkt. # 12), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. #s 12, 13, 14). Petitioner filed a reply (Dkt. # 21). More than a year and a half after filing his reply, Petitioner filed two (2) documents, docketed as "supplements" to the petition (Dkt. #s 25, 28). For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied. Any new claims raised in the "supplements" are barred by the one-year statute of limitations.

As a preliminary matter, the Court finds that the proper respondent in this matter is the state official having custody of Petitioner. See Rule 2(a), *Rules Governing Section 2254 Cases*. Petitioner is presently in custody at the Oklahoma State Penitentiary. The current warden is Randall G. Workman. Therefore, pursuant to Fed. R. Civ. P. 25(d), the Clerk of Court shall substitute Randall G. Workman for Marty Sirmons as party Respondent. In addition, W.A. Drew Edmondson, the former Attorney General of the State of Oklahoma, shall be dismissed from this action.

## BACKGROUND

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as found by the state court are presumed correct. Following review of the record, including the relevant transcripts and exhibits, this Court finds that the factual summary provided by the Oklahoma Court of Criminal Appeals ("OCCA") in its opinion resolving petitioner's direct appeal is adequate and accurate. The OCCA summarized the facts, as follows:

> Thirteen year-old [J.W.] was reported missing from his Tulsa home on June 20, 1989. Four days later, his right hand and arm were discovered in the mud on the bank of Lake Bixhoma in Wagoner County, Oklahoma, inside a plastic bag. Law enforcement officials later found [J.W.'s] thigh inside a plastic bag, and his dismembered torso was discovered two tenths of a mile away behind some rocks. [J.W.'s] head, arms, legs, and genitalia had been dissected, post-mortem, from the torso with precise cuts through the soft tissue by a sharp instrument. His head was eventually found floating in the water with a rock tied to his jaw with a wire. Officials identified [J.W.'s] body through fingerprints and unique scars behind his ears.

> [J.W.] knew the defendant, who lived five houses down the street. Appellant owned a body shop that was located four blocks from [J.W.'s] home. [J.W.] had performed odd jobs for the defendant at the body shop and had previously visited Appellant's home where the had watched a movie.

> [J.W.] was last seen alive with Appellant. According to Brian Hestdalen, [J.W.] was at the body shop with Appellant and Scott Essary on June 20, 1989, around noon. At some point, Appellant, Hestdalen, and Essary left to run errands, leaving [J.W.] locked inside the shop. Upon returning, Appellant mentioned fishing at Lake Bixhoma. Hestdalen heard Appellant ask [J.W.] to join him. Hestdalen left the body shop around two to three o'clock p.m.

> Scott Essary testified to seeing [J.W.] and Appellant leaving the body shop in Appellant's car. This fact was somewhat corroborated by a fingerprint from [J.W.] that was discovered on the inside passenger window of Appellant's car.

> The evidence connecting Appellant to [J.W.'s] murder was largely circumstantial. During interviews, Appellant admitted seeing [J.W.] on June 20, 1989, but claimed [J.W.] left about 11:00 a.m., saying he would be back in an hour. [J.W.] never returned. At noon, Appellant spoke with a neighbor. He went to see his insurance agent and then headed to Lake Skiatook to fish.

> Appellant admitted to fishing at Lake Bixhoma, owning a six and a half inch combat knife, and being familiar with the area where [J.W.'s] body was found. During one interview at the police station, a police officer walked by and announced

some body parts had been found in Lake Bixhoma. At this point, Appellant said, "I didn't do it" and left the station.

Inside Appellant's trunk, police found some red wire that had been cut and had a piece missing. A forensic specialist compared that wire with the wire affixed to the victim's head and testified they were of the same type. Testing revealed that both wires had black strip caulk on them.

On June 27, 1989, police took a photo of a wound on Appellant's right forearm. A State expert testified the wound was a "probable partial bite-mark." A defense witness, however, testified that the State's expert had insufficient data to make the determination he did, and that no definitive conclusion could be made regarding whether or not the injury was a bite-mark.

In order to get to the cove where [J.W.'s] head was found, officers had to take a curving dirt road that ran along the lake and had one or more picnic tables along it. Approximately one month before [J.W.'s] murder, Appellant had taken his brother Paul Garrison fishing on the south side of Lake Bixhoma. Paul described a similar road Appellant had driven him down.

Another interesting piece of circumstantial evidence was Appellant's odd visit to his insurance agent, Jim Woods, sometime before 4:30 p.m. on June 20, 1989. Supposedly there to make an insurance payment, Appellant "socially forced" Woods to accompany him to the parking lot to view his car. Appellant had Woods examine the car and trunk. Woods thought this was unusual. He described Appellant as nervous, very animated, and speaking fast.

Richard Collins visited Appellant on June 21, 1989, the day after [J.W.] went missing. Appellant told Collins he was going to the salvage yard, but wouldn't allow Collins to accompany him. Collins testified Appellant was very dirty and had an offensive odor, like a gutted dead animal. Later in the week, Collins claimed Appellant was acting nervous and strange, saying he wanted to account for every minute of the week. A week later, when Appellant and Collins went to a drive-in movie, Appellant said the police thought they had something--a pair of sweats with red primer they thought was blood.

A witness claimed to have seen [J.W.] and a man eating at a restaurant near Lake Bixhoma at about 12:30 p.m. on June 20, 1989. Police had a composite sketch drawn of the man seen with [J.W.]. The suspect was of a mixed race, possibly Hispanic and African American. Appellant is Caucasian. The witness testified the boy was hard of hearing and he was sure it was [J.W.]. The witness testified Appellant was not the man accompanying [J.W.].

(Dkt. # 12, Ex. 1 (footnotes omitted)).

On October 22, 1999, or more than ten (10) years after the murder of J.W., Petitioner was charged by Information with First Degree Murder (Count 1) in Tulsa County District Court, Case No. CF-1999-5129. The State filed a Bill of Particulars seeking the death penalty. On November

5-December 3, 2001, Petitioner was tried by a jury. On November 27, 2001, the jury found Petitioner guilty of First Degree Murder. At the conclusion of the punishment phase of trial, the jury found the existence of two (2) aggravating circumstances and recommended a sentence of death. On December 11, 2001, Petitioner filed a motion for a new trial. On December 19, 2001, the trial court denied the motion for a new trial and sentenced Petitioner to death in accordance with the jury's recommendation. Petitioner was represented during his criminal proceedings by attorneys Art Fleak, Kurt Hoffman, and Todd Cole.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorneys Michael D. Morehead and Jamie D. Pybas, Petitioner raised the following propositions of error:

Proposition 1: The ten year delay in prosecuting Mr. Garrison for the murder of [J.W.] deprived Mr. Garrison of his rights as secured to him by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article II, §§ 6, 7 of the Oklahoma Constitution.

Proposition 2: The State produced no evidence demonstrating that the crime may have occurred in Tulsa County in violation of the Fourteenth Amendment to the United States Constitution and Article II, § 20 of the Oklahoma Constitution.

Proposition 3: The evidence was insufficient to convict Mr. Garrison beyond a reasonable doubt.

Proposition 4: Mr. Garrison's trial was infected throughout with improper, irrelevant, and purely speculative expert opinion which, when considered as a whole, deprived Mr. Garrison of a fair trial in violation of the Fourteenth Amendment to the United States Constitution, Article II, § 7 of the Oklahoma Constitution and 12 O.S.2001, §§ 2401, 2402, 2403, and 2702.
A. The alleged "bitemark"
B. The "speaker wire"

4

Proposition 5:          Other testimony and exhibits were improperly admitted in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 6,7 of the Oklahoma Constitution.
        A.      Rick Collins' "gutted deer" testimony
        B.      Rick Collins' other testimony
        C.      Post-autopsy photo displaying the "Y" incision
        D.      Conclusion

Proposition 6:          The trial court abused its discretion in failing to grant a mistrial after the State elicited testimony in its case in chief concerning Mr. Garrison's pre-arrest exercise of his constitutional right to remain silent and to consult his attorney, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9, and 21 of the Oklahoma Constitution.

Proposition 7:          During both stages of trial, the prosecution engaged in deliberate misconduct, depriving Mr. Garrison of his rights to a fair trial and reliable sentencing hearing.
        A.      First stage appeals to sympathy for the victim and victim's family
        B.      Vilifying the defendant
        C.      Arguing facts not in evidence
        D.      Comments on defense's failure to produce evidence
        E.      Arguing departure as flight evidence
        F.      Improper cry for justice
        G.      Improper comments on remorse during second stage
        H.      Improper appeals to emotion
        I.      Conclusion

Proposition 8:          Once the prosecutor argued Mr. Garrison's departure as flight suggesting consciousness of guilt, the trial court committed reversible error in failing to instruct the jury on the proper use of the evidence, resulting in a violation of Mr. Garrison's right to due process and a fair trial under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Proposition 9:          Mr. Garrison received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article II, § 20 of the Oklahoma Constitution.
        A.      Failure to object to Rick Collins' graphic description of "gutting a deer"
        B.      Failure to rebut evidence of flight or request a flight instruction

C. Failure to properly utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of the trial

Proposition 10: The use of victim impact evidence violated his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 9, and 19 of the Oklahoma Constitution.

A. The victim impact witnesses' opinion as to a recommended sentence violated Mr. Garrison's due process rights to a fair and reliable sentencing hearing and trial by jury.

B. Victim impact evidence in general is violative of the Eighth Amendment and has no place in Oklahoma's sentencing scheme.

Proposition 11: The continuing threat aggravating circumstance is unconstitutional on its face and as applied in violation of the Eighth and Fourteenth Amendments to the United States Constitution as well as Article II, §§ 2, 9 of the Oklahoma Constitution.

Proposition 12: The "prior violent felony" and "continuing threat" aggravating circumstances rely on the same evidence resulting in "double counting" in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

Proposition 13: The accumulation of errors deprived Mr. Garrison of a fair trial.

See Dkt. # 12, Ex. 2. In a published opinion filed November 30, 2004, in Case No. D-2001-1513 (Dkt. # 12, Ex. 1), the OCCA affirmed Petitioner's conviction for First Degree Murder, but reversed and remanded for a new sentencing trial. See Garrison v. State, 103 P.3d 590 (Okla. Crim. App. 2004).

On June 14, 2004, while the direct appeal was pending, Petitioner filed an application for post-conviction relief at the OCCA. See Dkt. # 12, Ex. 6(a). Petitioner raised two (2) propositions of error, as follows:

Proposition 1: Mr. Garrison was denied the effective assistance of trial counsel and appellate counsel, contrary to the Sixth and Fourteenth Amendments of the

United States Constitution, and Mr. Garrison's conviction fo Murder in the First Degree must be vacated.

    A.    Trial counsel did not render effective representation in the trial court due to a failure to adequately investigate and marshal the evidence of a viable alternative suspect.

    B.    Direct review counsel did not render effective representation due to the failure to adequately investigate and present on direct appeal the deficient performance of trial counsel.

Proposition 2: Mr. Garrison was denied the effective assistance of appellate counsel, contrary to the Sixth, Eighth and Fourteenth Amendments of the United States Constitution as a direct result of state action which precluded counsel from properly preparing for, and presenting evidence at, the evidentiary hearing ordered on March 17, 2004 by the Court of Criminal Appeals and set for March 31, 2004 by the trial court.

(Dkt. # 12, Ex. 6). In an unpublished opinion, filed in Case No. PCD-2002-627, on February 18, 2005, after the case had been remanded for a new sentencing trial on direct appeal, the OCCA denied the application for post-conviction relief. See Dkt. # 12, Ex. 7.

In compliance with the OCCA's directive entered at the conclusion of direct appeal, a new sentencing trial was set in the state district court. Petitioner was represented by attorneys Sid Conway and Pete Silva. On January 5, 2007, the prosecution informed the trial judge that the bill of particulars was being withdrawn due to the absence of 498 pages of previously provided discovery material. The State offered Petitioner a sentence of life without parole. On January 12, 2007, Petitioner waived his right to a sentencing trial and the trial judge sentenced Petitioner to life without the possibility of parole.

On September 25, 2007, Petitioner, appearing *pro se*, filed his federal petition for writ of habeas corpus (Dkt. # 1). In his supporting brief, Petitioner identifies four (4) grounds for relief, as follows:

| Ground 1: | The ten year delay in prosecuting Mr. Garrison for the murder of [J.W.] deprived Mr. Garrison of his rights as secured to him by the due process clause of the 14th Amendment to the United States Constitution. |
| --- | --- |
| Ground 2: | The evidence was insufficient to convict Mr. Garrison beyond a reasonable doubt. |
| Ground 3: | During first stage of trial, the prosecutor engaged in deliberate misconduct, and once the prosecutor argued Mr. Garrison's departure as flight suggesting consciousness of guilt, the trial court committed reversible error in failing to instruct the jury on the proper use of the evidence, both deprived Mr. Garrison of his rights to a fair trial and due process under the 5th and 14th Amends. of the U.S. Const. |
| Ground 4: | Mr. Garrison received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. |

See Dkt. # 2. In response to the petition, Respondent asserts that Petitioner's claims do not justify relief under 28 U.S.C. § 2254(d). See Dkt. # 12.

### *ANALYSIS*

**A.      Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent states that Petitioner has exhausted his state court remedies for all claims raised in the petition with the exception of a claim challenging the standard used by the OCCA in evaluating the sufficiency of the evidence. See Dkt. # 12, ¶ 5 and n.3. Respondent further contends that claim has never been presented to the OCCA but that in light of the procedural posture of this case, it would be futile to require Petitioner to return to state court to exhaust the claim by filing a second application for post-conviction relief. Id. at n.3. The Court agrees and finds that Petitioner has exhausted available state court remedies for the claims raised in the petition.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

## B.     Claims adjudicated by the OCCA

This Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Snow v. Sirmons, 474 F.3d 693, 696 (10th Cir. 2007). Under AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. Alverson v. Workman, 595 F.3d 1142, 1146 (10th Cir. 2010) (citing Snow, 474 F.3d at 696). When a state court has adjudicated the merits of a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established[1] Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(1)(2); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).

The first step in applying § 2254(d)(1) standards is to assess whether there was clearly established federal law at the time the conviction became final, as set forth in the holdings of the Supreme Court. House v. Hatch, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If clearly established federal law exists, the Court must then consider whether the state court decision was contrary to or involved an unreasonable application of Supreme Court law. Id. at 1018. When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685,

---

[1]     A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006).

699 (2002); <u>Hooper v. Mullin</u>, 314 F.3d 1162, 1169 (10th Cir. 2002). It is not necessary, however, that the state court cite to controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). Further, the Supreme Court has recently held that "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, --U.S.--, 131 S.Ct. 1388, 1398 (2011). Thus, "evidence introduced in federal court has no bearing on §2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before that state court." <u>Id.</u> at 1400 (footnote omitted).

Application of § 2254(d)(2) requires the Court to review any factual findings of the state court to ascertain whether they were unreasonable in light of the evidence presented at trial. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Wood v. Allen</u>, -- U.S. --, 130 S.Ct. 841, 849 (2010) (citing <u>Williams</u>, 529 U.S. at 410). The "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

This habeas proceeding commenced well after the effective date of AEDPA. Although the crime for which Petitioner was convicted predates the law's enactment, the provisions of AEDPA govern pursuant to <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997). Therefore, to the extent Petitioner's claims are cognizable in this federal habeas corpus proceeding and not procedurally barred, those claims shall be reviewed pursuant to § 2254(d).

**1. Delay in filing charge**

As stated above, J.W. was last seen alive on June 20, 1989. Petitioner was not charged with the murder of J.W. until October 22, 1999, or more than ten years later. As his first ground of error, Petitioner alleges that the ten year delay between the murder of J.W. and the filing of the criminal charge in Tulsa County District Court, Case No. CF-2001-1513, deprived him of due process. See Dkt. # 2 at 12. On direct appeal, Petitioner complained that several witnesses, including his mother, Julie Lowe, his grandmother, Minnie Sperry, and his attorney and friend, Barney Miller, had died during the time between J.W.'s murder and the filing of the charge against Petitioner. See Dkt. # 12, Ex. 2. Petitioner also complained that several of the State's witnesses changed their recollections of key events. Id. Upon consideration of Petitioner's claim, the OCCA found "no evidence that the delay was for the purpose of gaining a tactical advantage." Id. at 8. The OCCA also determined that the delay did not result in a denial of due process because Petitioner failed to demonstrate prejudice. Specifically, the OCCA found that any prejudice resulting from the death of the witnesses identified by Petitioner was speculative. Nonetheless, the OCCA agreed with Petitioner that "the passage of time had an impact on this trial," particularly as to the witnesses' faded memories. See Dkt. # 12, Ex. 1 at 12. However, the OCCA further determined that "all of the points Appellant brings up" in support of his claim that he was prejudiced by the delay "were also pointed out to the jury during cross-examination." Id. The OCCA concluded that Petitioner's due process rights were not violated because "the jury knew the evidentiary problems due to the passage of time and would have taken them into account during deliberations." Id.

The Court finds Petitioner has failed to demonstrate entitlement to habeas corpus relief under 28 U.S.C. § 2254(d). There is no constitutional right to an immediate arrest, even where the prosecution's evidence is strong enough to support probable cause or guilt beyond a reasonable

doubt. See United States v. McManaman, 606 F.2d 919, 923 (10th Cir.1979). Nonetheless, a substantial delay in bringing charges may deprive a defendant of his right to a fair trial and due process under the Fifth and Fourteenth Amendments. See United States v. Marion, 404 U.S. 307, 322, 324 (1971) (holding that a defendant bears the burden of proof that the delay caused substantial prejudice to his right to a fair trial and that the delay was for the purpose of gaining a tactical advantage over him); see also United States v. Lovasco, 431 U.S. 783, 795-96 (1977). The Tenth Circuit Court of Appeals has adopted a stringent two-pronged test to evaluate due process claims based on alleged pre-indictment delay. First, a petitioner must prove that he suffered actual and substantial prejudice to his defense. Second, a petitioner must also prove that the prosecution purposefully designed the delay to gain a tactical advantage or to harass the petitioner. See United States v. Abdush-Shakur, 465 F.3d 458, 465-66 (10th Cir. 2006); United States v. Vap, 852 F.2d 1249, 1252 (10th Cir. 1988); Perez v. Sullivan, 793 F.2d 249, 259 (10th Cir. 1986). Both prongs of the test must be satisfied.

In the instant case, Petitioner claims that he was prejudiced by the more than ten (10) year delay because potential witnesses for the defense, his mother, his grandmother, and his lawyer, died during the period. However, Petitioner does not allege that any of the potential witnesses would have provided an alibi for his whereabouts at the time of the murder. "Vague and conclusory allegations of prejudice resulting from the passage of time and absence of witnesses are insufficient to constitute a showing of actual prejudice." United States v. Trammell, 133 F.3d 1343, 1351 (10th Cir. 1998). Petitioner also claims that he suffered prejudice as a result of witnesses' faded memories. However, as noted by the OCCA, Petitioner's jury was well aware of the inconsistencies now relied upon by Petitioner. Furthermore, nothing in the record indicates that the delay was

purposefully designed by the prosecution to gain a tactical advantage. Petitioner has not demonstrated that the OCCA's rejection of his due process claim was contrary to or an unreasonable application of Supreme Court precedent to the facts of this case. Therefore, Petitioner is not entitled to habeas relief under § 2254(d).

**2. Insufficient evidence to support conviction for First Degree Murder**

As his second ground of error, Petitioner claims that the State failed to present sufficient evidence to support his conviction for First Degree Murder. See Dkt. # 2 at 35. He also complains that the OCCA applied the newly adopted standard announced in Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985), to deny relief on this claim in violation of the ex post facto clause. See id. at 49. On direct appeal, the OCCA ruled as follows:

> The evidence in this record is not as strong as one would like when dealing with the issue of capital murder. The record contains significant circumstantial evidence indicating Appellant murdered [J.W.] and then attempted to cover his tracks. Appellant's odd behavior in the hours and days following the crime, including his statements about "a boy" and what appears to be deliberate attempts to establish an alibi, indicate he had guilty knowledge of what had transpired. Appellant's strange activities with his insurance agent near the significant time period is circumstantial evidence of guilt, as is his threat to Richard Collins and his voluntary statement, "I didn't do it," when confronted with the fact that body parts were found in the Lake. The bite-mark evidence, while certainly not decisive of the case, is relevant, considering Appellant's earlier visit by police, which led to the discovery of no wound.
> Even though the first stage evidence is wholly circumstantial, the question of whether or not it excludes every reasonable hypotheses other than guilt is a determination to be made by the trier of fact. In this case, the jury found that it did, after being instructed, "all of the facts and circumstances, taken together, must be inconsistent with any *reasonable* theory or conclusion of a defendant's innocence" (emphasis added). We presume the jury followed this instruction in making its determination that Appellant was guilty beyond a reasonable doubt.
> Twelve people reviewed the weight and credibility of the evidence and arrived at a unanimous decision that it was sufficient under the law. We find the evidence supports their decision. Most certainly, the evidence is sufficient to sustain the verdict when applying the test used by this Court in *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04. In other words, after viewing the evidence in the

light most favorable to the State and accepting all reasonable inferences and credibility choices that tend to support the jury's verdict, any rational trier of fact could have found the essential elements of First Degree Murder beyond a reasonable doubt.

(Dkt. # 12, Ex. 1).

As stated above, a writ of habeas corpus will not be issued on a state claim adjudicated on the merits unless the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Sufficiency of the evidence is a mixed question of law and fact reviewed under § 2254(d)(1) and (2). Maynard v. Boone, 468 F.3d 665, 673 (10th Cir. 2006).

In examining Petitioner's sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. Valdez v. Bravo, 373 F.3d 1093, 1097 (10th Cir. 2004); Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Applying this standard, this Court concludes that the OCCA's application of the Jackson standard, as incorporated in Spuehler, was not unreasonable. The jury heard testimony that J.W. knew Petitioner, had performed odd jobs around Petitioner's auto body shop, and had visited Petitioner at his home. See Dkt. # 14, Tr. Trans. Vol. 14 at 17, Vol. 15 at 27. On June 20, 1989, the last day J.W. was seen alive, he was at Petitioner's body shop. Id. Vol. 14 at 129-30. Witness Brian Hestdalen, a friend of Petitioner's, testified that on June 20, 1989, he heard Petitioner ask J.W. if he wanted to go fishing. Id. at 135. Witness Scott Essary, another friend of Petitioner's, testified that on June 20, 1989, he saw Petitioner and J.W. leave in Petitioner's car. Id. Vol. 15 at 24-25. Jim Woods, Petitioner's insurance agent, testified that Petitioner visited his office during the afternoon of June 20, 1989, and that he was nervous, "extremely agitated," spoke very fast and his "eyes darted about." Id. at 54-55, 58, 61-62. Woods also testified that Petitioner insisted that he come outside with Petitioner to inspect the exterior and the trunk of Petitioner's car. Id. at 59-60. Tulsa Police Officer Mike Cook testified that he interviewed Petitioner on June 27, 1989, and that Petitioner admitted he knew J.W. Id. Vol. 16 at 155. Petitioner told Officer Cook that he had last seen J.W. at Petitioner's residence on June 20, 1989, about 11 a.m., when J.W. agreed to mow Petitioner's lawn. Id. at 156-57. J.W. told Petitioner he would be back in an hour, but he never returned. Id. at

159. Officer Cook also testified that Petitioner's demeanor changed when he was asked about J.W. Id. at 166. He became agitated and defensive. Id. at 167.

The medical examiner testified that J.W.'s body was disarticulated after his death with a sharp instrument, probably a knife. Id. Vol. 18 at 200, 204. J.W.'s head, arms, legs, and genitalia were all severed after death. Id. at 204. A good friend of Petitioner's, Richard Collins, testified that on June 21, 1989, the day after J.W. disappeared, Petitioner visited him at his house. Id. Vol. 16 at 24. Collins described Petitioner as looking "pretty dirty," like he had been wrestling around in the dirt. Id. at 28. Collins also testified that Petitioner acted "very strange," had an "extremely bad odor," and smelled like he "had gutted an animal." Id. at 33-34. Later that week, Collins saw Petitioner again. Id. at 35. Petitioner told Collins he had "to account for every minute of that week . . . because of this deal with Paul." Id. at 38. Christy Jo Steenveld testified that Petitioner, a friend of her former husband, visited her home on June 20 or 21, 1989, and that he was "very filthy" and "very nervous-acting." Id. at 118, 121.

The State also presented evidence that Petitioner was familiar with Lake Bixhoma, where J.W.'s body was recovered on the south side of the lake. Id. Vol. 15 at 68-82. Petitioner admitted to police that he had fished at Lake Bixhoma, but told them, prior to learning that J.W.'s body had been recovered, he was unable to drive his vehicle on the south side of the lake. Id. Vol. 16 at 151. Paul Garrison, Petitioner's half-brother, testified that before J.W. disappeared, he had been fishing with Petitioner at Lake Bixhoma, and described an area that matched the area where J.W.'s body parts were found. Id. Vol. 17 at 175-81.

The State also presented physical evidence supporting Petitioner's conviction. Jon Paulson, employed in the Tulsa Police Department's forensic lab, testified that wire found tied to J.W.'s

severed head was the same type of wire, physically and chemically, as wire found in the trunk of Petitioner's car. Id. Vol. 18 at 140-172. Robert Yerton, the latent fingerprint examiner for the Tulsa Police Department, testified that a partial palm print recovered from Petitioner's car matched the prints taken from J.W.'s body and from a turtle bowl recovered from J.W.'s home. Id. at 49-51. Bryan Chrz, a dentist with experience in forensic odontology, testified that an injury on Petitioner's right forearm, as evidenced in a photograph taken by Tulsa Police Department detectives at the time of their initial interview of Petitioner on June 27, 1989, see id. Vol. 16 at 146, 148, was a probable partial bite. Id. Vol. 17 at 133.

Upon review of the trial transcripts, the Court finds that the evidence cited above, when viewed in a light most favorable to the State, was sufficient to allow the jury as a rational trier of fact to have found the essential elements of First Degree Murder, as recognized under Oklahoma law, beyond a reasonable doubt. Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Maynard, 468 F.3d at 673. The Court finds habeas corpus relief shall be denied on this claim.

Petitioner also argues that the OCCA should have applied the stringent "reasonable hypothesis" test Oklahoma previously used in circumstantial evidence cases, whereby such evidence sufficed for a conviction only if there was sufficient evidence to exclude every reasonable hypothesis but guilt. See Easlick v. State, 90 P.3d 556, 557-59 (Okla. Crim. App. 2004). While Petitioner's case was pending on direct appeal, the OCCA abandoned that standard and adopted the Spuehler standard (incorporating Jackson) for all sufficiency claims. Easlick, 90 P.3d at 559; Lay

v. State, 179 P.3d 615, 623 (Okla. Crim. App. 2008) ("Easlick overruled years of settled law and abolished the 'reasonable hypothesis' standard in the guilt/innocence instructions and on appellate review of sufficiency of the evidence claims."), *abrogated on other grounds by* Harmon v. State, 248 P.3d 918 (Okla. Crim. App. 2011). Petitioner acknowledges the OCCA's holding in Easlick, but asserts that the sufficiency issue should be reviewed under the reasonable hypothesis test because that was the standard in effect when the crime was committed and while his trial was held. As noted by the OCCA, however, that court has applied the Spuehler standard to other appeals decided after Easlick was issued. See Hogan v. State, 139 P.3d 907, 919 (Okla. Crim. App. 2006) ("[T]he language in Easlick clearly expressed [the OCCA]'s intent to apply the Spuehler standard in all cases reviewed on appeal post[-]Easlick. The retroactive application of a standard of review does not run afoul of any of [defendant]'s constitutional rights.").

The OCCA's use of the Spuehler standard, rather than the discarded reasonable hypothesis test, does not entitle Petitioner to habeas corpus relief. To the extent Petitioner argues that the OCCA's application of the Spuehler standard was an ex post facto violation, thereby implicating his due process rights, his claim is unavailing. The decision in Easlick did not alter the definition of criminal conduct or change the punishment for any offenses. Thus, its application did not constitute an ex post facto violation. See Sallahdin v. Gibson, 275 F.3d 1211, 1228 (10th Cir. 2002) (holding that application of a judicial decision was not an ex post facto violation when the decision did not redefine any crimes, defenses, or punishments). Petitioner is not entitled to habeas corpus relief on this aspect of his challenge to the sufficiency of the evidence.

### 3. Prosecutorial misconduct

As his third proposition of error, Petitioner alleges that during the first stage of his trial, the prosecutor engaged in deliberate misconduct. See Dkt. # 2 at 50. Specifically, Petitioner asserts that the prosecutor made improper appeals to sympathy for the victim and his family, improperly vilified Petitioner, improperly argued facts not in evidence, improperly commented on the defense's failure to produce evidence, and improperly argued Petitioner's departure from the State as evidence of flight. On direct appeal, the OCCA found that in some instances, the challenged comments "push[ed] the boundaries of professionalism." Dkt. # 12, Ex. 1 at 42. Nonetheless, the OCCA concluded that Petitioner had not been deprived of a fair trial. Id. Based on a careful review of the record, this Court finds that Petitioner has failed to demonstrate that he is entitled to habeas corpus under 28 § 2254(d).

Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of is so egregious as to render the entire proceedings against the defendant fundamentally unfair. See, e.g., Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). In Cummings, the Tenth Circuit enunciated the contours of this inquiry:

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statement plausibly could have tipped the scales in favor of the prosecution. We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. When a prosecutor responds to an attack made by defense counsel, we evaluate that response in light of the defendant's argument. Ultimately, we must consider the probable effect the prosecutor's [conduct] would have on the jury's ability to judge the evidence fairly.

Id. (quoting Hopkinson v. Shillinger, 866 F.2d 1185, 1210 (10th Cir. 1989) (internal quotation marks and citations omitted)).

### a.  improper appeals to sympathy

Petitioner complains that during opening and closing argument, the prosecutor "attempted to distract and inflame the jury by improperly appealing to the jury's sympathy for the victim and, particularly, his family." See Dkt. # 2 at 50-51. He further alleges that the prosecution improperly introduced victim impact evidence in the first stage of trial. Id. at 51-52. On direct appeal, the OCCA found that:

> [T]he pleas for sympathy did not individually or cumulatively deny [Petitioner] a fair trial. It is fair to say the prosecutors crossed over the line at times and injected improper sympathy into their arguments and opening statement. But defense counsel did a good job of lodging objections along the way, many of which resulted in sustained objections and admonishments. Some of the prosecutor's comments were within the latitude allowed during closing arguments. The jury was instructed not to allow sympathy, sentiment or prejudice enter into their deliberations. We presume they followed that instruction. Any error concerning this issue was harmless.

(Dkt. # 12, Ex. 1 at 40).

The record reflects that the prosecution repeatedly referred to the victim as a "little boy" who was "young," "innocent," and afraid of the dark. See Dkt. # 14, Tr. Trans. Vol. 13 at 12, 13, 14. The prosecution also stated that the victim's family members never said goodbye to J.W. and never imagined that J.W. "would end up on pieces, slaughtered like an animal." See id. at 15, Vol. 21 at 8, 74, 76. The record also reflects that defense counsel objected to most of the comments. The trial judge sustained most, but not all of the objections, and admonished the jury to disregard the objectionable comments. This Court finds that many of the comments were fair comment on the evidence. The nature of this crime probably generated sympathy before the prosecution made any closing remarks. See Duvall v. Reynolds, 139 F.3d 768, 795 (10th Cir. 1998). In addition, the jury was instructed not to let sympathy, sentiment or prejudice enter into their deliberations. See Dkt. # 14, Tr. Trans. Vol. 20 at 134 (statement by trial judge that Oklahoma Uniform Jury Instructions 10-1 through 10-10 were being given to the jury). As a result, the Court concludes that even if the

prosecutor's comments were improper, they did not so infect Petitioner's trial with unfairness as to render the resulting conviction a denial of due process.  See, e.g., Duckett v. Mullin, 306 F.3d 982, 991-92 (10th Cir. 2002) (rejecting habeas challenge to State's first-stage victim-impact argument); Hawkins v. Mullin, 291 F.3d 658, 677 (10th Cir. 2002) (rejecting a habeas claim challenging the State's first-stage evidence concerning the victim's personal history and her attributes as a mother). Petitioner is not entitled to habeas corpus relief on this claim of prosecutorial misconduct.  28 U.S.C. § 2254(d).

### b.  improper vilification of Petitioner

Next, Petitioner complains that during closing argument, the prosecution repeatedly drew an analogy between him and "the darkness of which [J.W.] was so afraid."  See Dkt. # 2 at 57-58. Without analysis, the OCCA found no error. See Dkt. # 12, Ex. 1 at 40.  The Court agrees with the OCCA's assessment.  Furthermore, the Court finds that even if the prosecutor's comments were improper, they did not so infect Petitioner's trial with unfairness as to render the resulting conviction a denial of due process. See Wilson v. Sirmons, 536 F.3d 1064, 1118 (10th Cir. 2008). Petitioner is not entitled to habeas corpus relief on this claim of prosecutorial misconduct.  28 U.S.C. § 2254(d).

### c.  improper argument based on facts not in evidence

Petitioner also alleges that the prosecution injected arguments not based on the facts. See Dkt. # 2 at 59.  Specifically, he complains that during closing argument, the prosecutor stated that "the Chevy Impala has a higher suspension than a late '70s model Trans Am," that Petitioner was "playing games" with the police, and that Petitioner had referred to J.W. as "the little pest."  Id. at 59-63. The OCCA denied relief on this claim  See Dkt. # 12, Ex. 1 at 40. First, the state appellate

court noted that defense counsel's objection was sustained and the jury admonished as to the comment regarding the automobile suspensions. Id. The OCCA further found no plain error as to the other comments which drew no objection. Id. This Court agrees. The prosecutor is given reasonable latitude in drawing inferences from the evidence during closing arguments. See Duvall, 139 F.3d at 795. In this case, the prosecutor's representations did not cause the trial to be fundamentally unfair. Petitioner is not entitled to habeas corpus relief on this claim of prosecutorial misconduct. 28 U.S.C. § 2254(d).

### d. improper comment on defense's failure to produce evidence

Next, Petitioner complains that the during closing argument, the prosecutor improperly insinuated that if one of Petitioner's neighbors, Roy Jenkins, could have corroborated Petitioner's explanation of his whereabouts on the day of J.W.'s disappearance, he would have been called by the defense. See Dkt. # 2 at 63. The prosecutor also commented on the failure of the defense to produce evidence that Petitioner possessed only one checking account. Id. According to Petitioner, those comments improperly shifted the burden of proof. Id. On direct appeal, the OCCA found that since defense counsel objected to the first comment and the trial judge issued a "strong admonishment" to the jury to disregard the comment, any error was cured. See Dkt. # 12, Ex. 1 at 40-41. The OCCA further found that as to the second comment, "no error occurred." Id. This Court finds that the comments were not improper. "As long as evidence can be solicited other than from the mouth of the accused, it is proper to comment upon the failure of the defense to produce it." Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999) (quoting United States v. Gomez-Olivas, 897 F.2d 500, 503 (10th Cir. 1990)). Although comments concerning the defendant's failure to produce a particular witness raise an inference that if the witness had been called, his testimony would have

been harmful to the accused, they are not improper under appropriate circumstances. <u>United States v. Dyba</u>, 554 F.2d 417, 422 (10th Cir. 1977). The prosecutor may freely refer to the fact that the defense has failed to rebut a natural inference that may be drawn from the facts in evidence or failed to corroborate the claims of his witnesses. <u>United States v. Rahseparian</u>, 231 F.3d 1267, 1273-74 (10th Cir. 2000). These arguments do not shift the burden of proof to the defendant when the trial court gives "subsequent instructions to the jury that arguments of lawyers are not evidence, that the burden of proof is with the government, and that the defendant has no burden to prove innocence, to call witnesses, or to produce any evidence at all." <u>Gomez-Olivas</u>, 897 F.2d at 503-504. In this case, the jury was instructed before opening arguments that the State of Oklahoma had the burden of presenting the evidence that establishes guilt beyond a reasonable doubt, and that statements or arguments by the attorneys was not evidence. <u>See</u> Dkt. # 14, Tr. Trans. Vol. 13 at 6, 8. In addition, the jury was provided the general closing charge instructions, OUJI -CR 2d, 10-1 through 10-10, providing, *inter alia*, that the State has the burden of proving the defendant's guilt beyond a reasonable doubt. <u>See</u> Dkt. # 14, Tr. Trans. Vol. 20 at 134. The Court concludes that Petitioner is not entitled to habeas corpus relief on this claim of prosecutorial misconduct. 28 U.S.C. § 2254(d).

### e. improper argument based on Petitioner's departure from the state

As his final separate claim of prosecutorial misconduct, Petitioner alleges that during closing argument, the prosecutor improperly argued that Petitioner's departure from the State was flight. <u>See</u> Dkt. # 2 at 66. During trial, two witnesses testified concerning Petitioner's departure from Oklahoma. Brian Essary testified that Petitioner left Tulsa because "the neighbors had been unfriendly, that, with all the media coverage, he just didn't feel that it was safe for him and his family." <u>See</u> Dkt. # 14, Tr. Trans. Vol. 15 at 33. Similarly, Richard Collins testified that Petitioner

23

moved to North Carolina four to eight weeks after the disappearance of J.W.  See id. Vol. 16 at 51.

That testimony provided a plausible reason, other than consciousness of guilt, for Petitioner's departure.  In addition, his departure was not immediate. However, during closing argument, the prosecutor stated that "innocent people don't need to leave the State." See id. Vol. 21 at 37. As noted by the OCCA, the trial judge sustained defense counsel's objection and admonished the jury to disregard the comment, saying, "It's not for your consideration at this time or when you retire to decide your verdict in the case." See Dkt. # 12, Ex. 1 at 41.  The OCCA concluded that any misconduct was cured by the admonishment.  Id.  Upon review of the record, including the testimony of the witnesses, this Court finds that the prosecution witness's reference during closing argument to Petitioner's departure from the State was not so prejudicial as to deprive him of a fair trial. He is not entitled to habeas corpus relief on this claim of prosecutorial misconduct. 28 U.S.C. § 2254(d).

### f.  cumulative effect of prosecution's improper comments

Petitioner argues that the pattern of prosecutorial misconduct infected his trial with unfairness.  See Dkt. # 2 at 70. In rejecting Petitioner's claim that the cumulative effect of prosecutorial misconduct deprived him of a fair trial, the OCCA stated that:

> Here, the prosecutorial team was aggressive and consistently pushing the limits of acceptable argument.  Defense counsel did not stand idly by, however, and lodged frequent objections.  Such is the nature of our adversarial system.  The trial judge was vigilant in admonishing jurors throughout the proceedings when improper comments and arguments were made.  We thus find the cumulative effect of the instances of prosecutorial misconduct did not deprive [Petitioner] of a fundamentally fair trial.

(Dkt. # 12, Ex. 1 at 42).  This Court readily agrees with the OCCA's conclusion.  Petitioner has failed to demonstrate entitlement to habeas corpus relief under 28 U.S.C. § 2254(d).

### 4. Failure to give flight instruction

As part of his third proposition of error, Petitioner argues that after the prosecutor "unfairly twisted" Petitioner's departure from the State of Oklahoma into evidence of flight suggestive of a consciousness of guilt, the trial court should have *sua sponte* given the jury a flight instruction. See Dkt. # 2 at 71. On direct appeal, the OCCA addressed the trial court's failure to give a flight instruction after the prosecutor stated that "innocent people don't need to leave," finding as follows:

> The instruction probably should have been given, but Appellant's counsel did not request it. We see valid strategic reasons for not requesting the instruction, however, for the instruction spells out how the evidence may be considered as circumstantial evidence of guilt. In light of the trial judge's admonishment to jurors to disregard the comments regarding "innocent people don't need to leave" during the trial and during jury deliberations, we find no plain error in the omission of this instruction, *sua sponte*.

(Dkt. # 12, Ex. 1 at 34 (footnote and citations omitted).

"A habeas petitioner is only entitled to relief . . . for alleged violations of federal rights, not for errors of state law." Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002) (citation omitted). When an allegedly erroneous jury instruction is given, this Court examines only "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). Stated another way, "'[h]abeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.'" Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir. 1990) (quoting Brinlee v. Crisp, 608 F.2d 839, 854 (10th Cir. 1979)). Furthermore, where a petitioner challenges the trial court's refusal or failure to give a specific instruction, this Court uses a highly deferential standard of review in evaluating the alleged

error. Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999). The burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Petitioner has not demonstrated that he suffered prejudice as a result of the trial court's failure to give a flight instruction. In light of the testimony discussed in Part B(3)(e), above, Petitioner has not demonstrated that his trial was rendered fundamentally unfair as a result of the trial court's failure to issue a flight instruction. Petitioner is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

### 5. Ineffective assistance of trial counsel

As his fourth proposition of error, Petitioner claims that trial counsel provided ineffective assistance in failing to object to Rick Collins' graphic description of "gutting a deer" and in failing to rebut evidence of flight or request a flight instruction. See Dkt. # 2 at 73-76. The OCCA denied relief, citing Strickland v. Washington, 466 U.S. 668, 687 (1984), and finding that counsel provided ineffective assistance. See Dkt. # 12, Ex. 1 at 43. The OCCA also observed that because "the instruction spells out how the evidence may be considered circumstantial evidence of guilt," see id. at 34, trial counsel had valid strategic reasons for not requesting a flight instruction.

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Knowles v. Mirzayance, --- U.S. ---, 129 S.Ct. 1411, 1420 (2009). Under Strickland, a defendant must show that his counsel's performance was deficient and that the

deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). The Supreme Court has noted that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S. at —, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at —, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, --- U.S. ---, 131 S.Ct. 770, 788 (2011). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin, 275 F.3d at 1235; Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

The Court agrees with the OCCA that Petitioner cannot satisfy the <u>Strickland</u> standard. The record reflects that during Collins' testimony, defense counsel reurged a motion in limine seeking to exclude the testimony concerning Petitioner's odor. The motion was denied. <u>See</u> Dkt. # 14, Tr. Trans. Vol. 16 at 27. Defense counsel's objection to Collins' anticipated testimony that Petitioner smelled like he had gutted a deer was overruled. <u>Id.</u> When Collins was asked what kind of odor goes with killing or gutting a deer, he stated "it's the odor of death." <u>Id.</u> at 29. Defense counsel's objection was sustained and the jury was admonished to disregard the phrase used by Collins. <u>Id.</u> at 31. Upon review of the record, the Court finds that in light of the multiple objections lodged to the testimony concerning Petitioner's odor, defense counsel did not perform deficiently.

Similarly, the Court has determined above that the trial court did not err in failing to issue *sua sponte* a flight instruction. For those same reasons, Petitioner's trial counsel did not perform deficiently in failing to request a flight instruction. In light of the wording of the flight instruction, defense counsel's failure to request the instruction was not "completely unreasonable." <u>Fox v. Ward</u>, 200 F.3d 1286, 1296 (10th Cir.2000) (stating that strategic decisions are constitutionally ineffective only if they are "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy" (quotation omitted)). Petitioner has failed to demonstrate that the OCCA's adjudication of these claims of ineffective assistance of counsel was contrary to, or an unreasonable application of federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this claim.

**C.     New claim raised in "Supplements"**

On August 13, 2010, Petitioner submitted for filing a document entitled "Federal Law Enforcement Corruption Probe" (Dkt. # 25). On September 1, 2010, he filed a second document

entitled "Federal Law Enforcement Corruption Probe" (Dkt. # 28). Both are addressed to Magistrate Judge Paul Cleary[2] and both allege that the investigation and his subsequent prosecution for the murder of J.W. were fraught with corrupt police tactics. Petitioner also alleges that the police intentionally lost or destroyed crucial evidence, including recordings of the 911 calls he placed as he was being assaulted by his brother Paul Garrison on June 11, 1989, and a tape recording of his interview by Tulsa Police on June 27, 1989.

Any new claim identified in the supplements is not properly before the Court. The filing of amended and supplemental pleadings is governed by Fed. R. Civ. P. 15. Under that rule, Petitioner was required to obtain leave of Court before filing an amended or supplemental pleading. Fed. R. Civ. P. 15(a)(2), (d). Petitioner did not obtain leave of Court prior to filing the "supplements." For that reason, the Court will not consider any new claim, including Petitioner's claim of police corruption, first raised in the supplements. Furthermore, Petitioner has not presented any claim based on police corruption to the state courts. As a result, the claim is unexhausted and cannot provide a basis for habeas corpus relief.

Even if Petitioner had complied with the applicable procedural rules, any new claim asserted in the "supplements" appears to be time-barred by the one-year limitations period. Petitioner did not file the "supplements" until almost three (3) years after he filed his habeas corpus petition.

---

[2]     Recent allegations of police corruption in the handling of evidence in controlled drug cases have prompted a federal investigation of certain Tulsa police officers. Criminal charges based on that investigation were filed in this federal district court and Magistrate Judge Cleary entered rulings in those cases. However, there is no overlap between the investigation of J.W.'s murder and Petitioner's subsequent conviction of First Degree Murder and the investigation of police corruption and resulting filing of criminal charges against certain Tulsa police officers. In all likelihood, media coverage of the recent police corruption investigation provided impetus for Petitioner to file the "supplements."

Because the supplements were filed after expiration of the limitations period provided by 28 U.S.C. § 2244(d), consideration of any new claim raised in the supplements is governed by Fed. R. Civ. P. 15(c) (providing conditions determining whether an amended pleading relates back to the date of the original pleading). See United States v. Espinoza-Saenz, 235 F.3d 501 (10th Cir. 2000); see also Mayle v. Felix, 545 U.S. 644, 650 (2005) (holding that an amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth").

Petitioner's claim of police corruption is an entirely new claim and does not relate back to the original petition. See Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001) (citing Espinoza-Saenz, 235 F.3d at 505, for proposition that "an untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion *if and only if* the original motion was timely filed and *the proposed amendment does not seek to add a new claim or to insert a new theory into the case*"). Because a majority of amendments to § 2254 petitions raise issues which relate to the petitioner's trial and sentencing, to allow amendment under that broad umbrella would be tantamount to judicial rescission of AEDPA's statute of limitations period. Cf. United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000) (stating that to allow untimely amendments bringing new claims arising out of the same trial proceeding as the original claims, "would undermine the limitations period set by Congress in the AEDPA"); see also United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999) (holding that granting motion to amend "would have frustrated the intent of Congress that claims under 28 U.S.C. § 2255 be advanced within one year after a judgment of conviction becomes final"). Therefore, under the circumstances here, the relation

back provision of Rule 15(c) cannot be applied to save Petitioner's new claims asserted in the "supplements." Since Petitioner's new claims do not relate back to the date of the original petition, the Court finds that, unless Petitioner is entitled to tolling of the limitations period, to allow the consideration of the new claims would frustrate the intent of Congress in enacting the statute of limitations provisions of the AEDPA.

The Court finds no statutory or equitable basis for tolling the limitations period in this case. First, the pendency of the instant case does not serve to toll the federal limitations period under 28 U.S.C. § 2244(d)(2). Duncan v. Walker, 533 U.S. 167 (2001) (holding that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2)).

Second, Petitioner could argue that his one-year limitations period for his claim of police corruption commenced under the terms of 28 U.S.C. § 2244(d)(1)(D). Under that subsection, the one-year period may begin to run on "the date on which the *factual predicate* of the claim . . . presented *could have been discovered through the exercise of due diligence*." 28 U.S.C. § 2244(d)(1)(D) (emphases added). The Court finds, however, that the factual predicate of Petitioner's claim arose during the investigation of J.W.'s death and Petitioner's subsequent prosecution. Knowledge of the legal significance of facts does not trigger application of § 2244(d)(1)(D). See Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (holding that for the limitations period to run, the petitioner must understand "simply the facts themselves" rather than "the legal significance of these facts"); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("the trigger in § 2244(d)(1)(D) is (actual or imputed) discovery of the claim's 'factual predicate,' not recognition of the facts' legal

significance"). Therefore, § 2244(d)(1)(D) does not apply to make Petitioner's claim of police corruption timely.

Lastly, the statute of limitations contained in § 2244(d) may be subject to equitable tolling. See Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). To be eligible for equitable tolling, a petitioner must make a two-pronged demonstration: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)), so as to prevent him from timely filing his habeas petition. Petitioner is not entitled to equitable tolling in this case. Petitioner did not exercise diligence in pursuing the new claims identified in the "supplements." All of the "facts" asserted by Petitioner in support of his claim of police corruption occurred during the investigation and prosecution of the criminal charge against him, or certainly well in advance of the filing of the original petition. See Dkt. #s 25 and 28. Thus, Petitioner should have been aware of the claims at the time he filed his original petition. Petitioner has provided no sound explanation for his omission of the claims. As a result, the Court finds Petitioner is not entitled to equitable tolling of the limitations period. See Miller, 141 F.3d at 978. Therefore, any new claim raised in the "supplements" is time-barred.

**D. Certificate of appealability**

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner

can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the Oklahoma Court of Criminal Appeals was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.


**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall **substitute** Randall G. Workman for Marty Sirmons as party Respondent.

2. Respondent W.A. Drew Edmondson, former Attorney General of the State of Oklahoma, is **dismissed** from this action.

3. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

4. A certificate of appealability is **denied**.

5. A separate judgment shall be entered in this matter.

**DATED** this 29th day of August 2011.

James H. Payne
United States District Judge
Northern District of Oklahoma